## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER WILLS,** | : | **Civil No. 3:13-CV-1787** |
| | : | |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

The plaintiff in this action, Christopher Wills, is an inmate in the custody of the Federal Bureau of Prisons, currently incarcerated at the Federal Correctional Complex in Coleman, Florida.  Wills alleges that while he was housed at the United States Penitentiary, Canaan, in June 2011, he was sickened when he consumed chicken fajitas that were tainted with salmonella.  He has brought a claim against the United States for negligence pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-80.  The United States has now moved to dismiss that claim pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that Wills never exhausted

this claim, which is a statutory prerequisite, and thus contending that the Court lacks subject-matter jurisdiction over this lawsuit.  (Doc. 52.)

The defendant has supported its motion with a sworn affidavit showing that Wills has never properly presented his claim to the Bureau of Prisons for administrative review, and demonstrating that Wills's purported efforts to show that he exhausted this claim are nothing more than fabrications that never happened, and could not have happened as Wills contends.  For the reasons that follow, we recommend that the motion be granted because Wills has not come forward with any credible evidence to show that he did in fact exhaust his claims, and because Wills' explanation as to why his claim should be deemed exhausted is entirely incredible and was plainly fabricated by him.[1]

---

[1] This is one of hundreds of lawsuits that have been filed in this Court arising out of an undisputed incident of food poisoning that occurred at USP-Canaan in June 2011.  In some of these cases, the parties have sharply disagreed about whether particular inmate-plaintiffs exhausted their claims as required under the FTCA.  In reviewing these cases where exhaustion has been disputed, we have endeavored to give inmate-plaintiffs the benefit of the doubt on a preliminary motion to dismiss, or even on motions for summary judgment, where there is even some minimal, arguably credible evidence that the inmate-plaintiff timely presented a claim to the BOP for administrative review.  See Charles D. Jurbala v. United States, No. 3:14-CV-1238 (Doc. 21) (recommending that motion to dismiss for lack of jurisdiction be denied without prejudice).  While we have indulged every reasonable inference in favor of *pro se* litigants in this field, as discussed below, this case lacks even a minimal, plausible showing by the plaintiff that he complied with the exhaustion requirement.  To the contrary, the evidence compels a finding that Wills not only failed to exhaust his claim administratively, but also

## II.  BACKGROUND

Wills initiated this action by filing a complaint on June 28, 2013, alleging injuries sustained due to salmonella poisoning.  (Doc. 1.)  On July 3, 2013, the Court entered an order staying all pretrial deadlines and instructing the parties to engage in mediation of Wills's claims.  (Doc. 5.)  Thereafter, the Court twice extended the mediation deadline, but efforts to resolve this case outside of litigation were unsuccessful.  (Doc. 15, 16.)  Following the last of these efforts, the defendants moved to dismiss the action on December 9, 2013.  (Doc. 17.)  On the same day, Wills filed a motion for leave to amend his complaint.  (Doc. 19.)

The Court granted Wills's motion, accepted his amended complaint for filing, and denied the defendants' motion to dismiss as moot, but without prejudice to renew the motion before January 3, 2014.  (Doc. 21.)  The defendants renewed their motion to dismiss on December 18, 2013, asserting that Wills had failed to exhaust his administrative remedies prior to bringing suit.  (Doc. 23.)  On January 15, 2014, Wills filed a brief opposing the defendants motion, and attached documentation that purported to show that he had in fact exhausted his administrative remedies.  (Doc.

---

that he concocted evidence and argument in an attempt to suggest that he did try to exhaust, and that either the BOP or the United States Postal Service somehow thwarted his efforts to do so.  We cannot and the district court should not countenance Wills's deceptive tactics in this case.

26.)  Based on that initial showing, the defendants withdrew that aspect of their

motion to dismiss based on Wills's asserted failure to exhaust.  (Doc. 29.)

The Court considered the remainder of the defendants' preliminary dispositive

motion, and on May 7, 2014, the Court granted the defendants' motion to dismiss all

claims and defendants other than Wills's FTCA claim against the United States.

(Doc. 41.)  Thereafter, on August 1, 2014, the Court issued a case management order

that directed the United States to file, *inter alia*, an answer or other response to the

complaint.  (Doc. 47.)  On August 28, 2014, the United States filed the instant motion

to dismiss, against asserting that Wills never exhausted his administrative remedies

as required before bringing an FTCA claim, and, therefore, arguing that this case

must be dismissed because the Court lacks subject-matter jurisdiction over the FTCA

claim.  (Doc. 52, 53.)  Wills filed a brief in opposition to this motion, to which the

United States replied.  (Docs. 58, 64.)

## III.   DISCUSSION

### A.   Standard of Review

The defendant has moved to dismiss this complaint pursuant to Rule 12(b)(1)

of the Federal Rules of Civil Procedure.  Rule 12(b)(1), in turn, permits the dismissal

of an action for "lack of subject matter jurisdiction."  A Rule 12(b)(1) motion may be

treated as either a facial or factual challenge to the court's subject matter jurisdiction.

See Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir.1977). In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff. See id.; PBGC v. White, 998 F.2d 1192, 1196 (3d Cir.1993). In reviewing a factual attack, the court may consider evidence outside the pleadings. See Gotha v. United States, 115 F.3d 176, 178-79 (3d Cir.1997) (citing Mortensen, 549 F.2d at 891). Gould Electronics Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)(footnote omitted) holding modified on other gr'ds by Simon v. United States, 341 F.3d 193 (3d Cir. 2003).

Here, the defendant's motion is cast as one which presents a factual attack upon subject matter jurisdiction, arguing that this Court lacks jurisdiction over this claim, due to the plaintiff's failure to timely exhaust his administrative remedies.  When presented with such a fact-bound jurisdictional challenge are cautioned that:

> A factual challenge contests the existence of subject matter jurisdiction, apart from any pleadings. Id. In reviewing a factual challenge, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," even where disputed material facts exist. Mortensen, 549 F.2d at 891.  In a factual challenge, the plaintiff has the burden of persuasion to show that jurisdiction exists.  Gould, 220 F.3d at 178; Mortensen, 549 F.2d at 891.  If the defendant presents evidence contesting any allegations in the pleadings, the presumption of truthfulness does not attach to the plaintiff's allegations and the plaintiff may present facts by affidavit or deposition or in an evidentiary hearing. Gould, 220 F.3d at 177; Mortensen, 549 F.2d at 891, 893 n. 18. "[I]f

there is a dispute of material fact, the court must conduct a plenary trial on the contested facts prior to making a jurisdictional determination." Gould, 220 F.3d at 177.

Moyer Packing Co. v. United States, 567 F. Supp. 2d 737, 748 (E.D. Pa. 2008).

## B.   **Exhaustion and Statute of Limitations Considerations Under the FTCA**

This motion also touches on the interplay of the FTCA's exhaustion requirement and statute of limitations in a factual setting where resolution of these issues turns, in large measure, upon the credibility of the plaintiff's claims. These credibility questions are important because, as a general rule, the United States enjoys sovereign immunity from suit unless it otherwise consents to be sued. White-Squire v. U.S. Postal Serv., 592 F.3d 453, 456 (3d Cir. 2010). The United States' "consent to be sued must be 'unequivocally expressed,' and the terms of such consent define the court's subject matter jurisdiction." Id. The Federal Tort Claims Act constitutes "a limited waiver of the United States's sovereign immunity." Id. The FTCA provides that the United States shall be liable, to the same extent as a private individual, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" 28 U.S.C. § 1346(b)(1); see

also 28 U.S.C. § 2674.  Therefore, compliance with the procedures prescribed by the FTCA is a prerequisite to obtaining relief under this statute.

One of these prerequisites to suit under the FTCA is that a claim must first be presented to the federal agency and be denied by the agency, or be deemed to be denied. Section 2675(a) of Title 28, United States Code, provides in pertinent part:

> An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.  The failure of the agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section . . . .

Thus, prior to commencing an FTCA action against the United States in federal court, however, a plaintiff must "first present[] the claim to the appropriate Federal agency" and receive a final denial "by the agency in writing and sent by certified or registered mail."  28 U.S.C. § 2675(a).

Moreover, once an administrative claim is addressed by the agency, a dissatisfied claimant must promptly file suit.  The failure to timely file a complaint will bar the plaintiff from proceeding in federal court.  As the FTCA notes:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal Agency within two years after such claim accrues or unless action is begun within six months

7

after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).

The FTCA, thus, imposes a twofold obligation of timeliness upon litigants. Under the FTCA there is a two-year period in which a claim must be tendered to the affected federal agency for its consideration. Wadhwa v. Nicholson, 367 F. App'x 322, 325 (3d Cir. 2010). Once the agency has acted upon the administrative claim, denying the claim, the plaintiff then has six months in which to proceed to court. Id. Further, "§ 2401(b)'s limitations periods must be read in the conjunctive. See Willis v. United States, 719 F.2d 608, 610–613 (2d Cir.1983); Houston v. U.S. Postal Serv., 823 F.2d 896, 902 (5th Cir.1987); Ellison v. United States, 531 F.3d 359, 362–63 (6th Cir.2008); Schuler v. United States, 628 F.2d 199, 201–02 (D.C.Cir.1980) (en banc) (per curiam). . . . . [Therefore] both limitations periods under § 2401(b) must be satisfied in order for an FTCA complaint to be timely." Seiss v. United States, 792 F. Supp. 2d 729, 732 (D.N.J. 2011).

## C.   Wills' FTCA Claim is the Only Claim Remaining in this Case

Although the pending motion is focused on the United States' contention the Wills's FTCA claim must be dismissed for lack of subject-matter jurisdiction, there is a preliminary matter that needs to be addressed, one that stems from Wills's

8

misunderstanding regarding the scope of this litigation.  In his brief in opposition to the United States' motion, Wills suggests that he is continuing to press <u>Bivens</u> claims against individual defendants in this action, and that these claims should be permitted to proceed unaffected by the motion to dismiss the FTCA claim.  Wills is mistaken.

In the Court's order of May 7, 2014, Wills' <u>Bivens</u> claims against individual defendants were dismissed without prejudice to his right to file an amended complaint within 21 days.  Wills never filed an amended complaint within the 21-day period following the dismissal of his <u>Bivens</u> claims, and thus he never endeavored to plead new <u>Bivens</u> claims.  As result, the <u>Bivens</u> claims have been dismissed through Wills's inaction.  Wills' insistence to the contrary simply reflects his misunderstanding about the effect of the Court's prior order, but the effect of that order is clear, and the <u>Bivens</u> claims are no longer part of this action.  Wills' FTCA claim against the United States is the only claim remaining in this case.

**D.    The United States Has Not Waived or Otherwise Forfeited the Right to Challenge the Court's Subject-Matter Jurisdiction Over Wills's FTCA Claim**

Next, Wills curiously argues that the United States failed to file a timely responsive pleading in accordance with the Court's case management order, and thus Wills concludes that "the Defendants have forfeited the opportunity to file a response to the Complaint and are now subject to a summary judgement [sic] on the record and

uncontested merits of the Complaint." (Doc. 58, at 2.) Wills is simply incorrect, both as a factual matter and as a matter of law.

The case management order issued on August 1, 2014, required the United States to answer or otherwise respond to the complaint by September 5, 2014. (Doc. 47, at 2.) Following issuance of this order, the United States filed the pending motion to dismiss, together with a supporting brief, on August 28, 2014. (Docs. 52, 53.) The motion is a timely response to Wills's amended complaint, and the United States has not waived its right to seek dismissal of the remaining FTCA claim on jurisdictional grounds.

Furthermore, even assuming that the United States had not filed a timely response to the amended complaint, which is plainly not the case, the United States would not be precluded from seeking to have this case dismissed for lack of jurisdiction. Wills argues not only that the United States is untimely in bringing this critical issue to the Court's attention, but also seems to suggest that this issue has already been resolved in his favor because the United States previously "conceded the issue in favor of Plaintiff" and that such an "adjudica[tion] in favor of plaintiff" precludes dismissal under "[42 U.S.C.] § 1997e". (Doc. 58, at 3-5.) Here, too, Wills is mistaken.

The Court has never adjudicated the United States' exhaustion defense on the merits, and the United States has never conceded this legal issue. Instead, the United States previously raised this issue and then withdrew its argument after Wills submitted documents that he contends demonstrate exhaustion of his claims (Doc. 26.), but this fact does not operate to bar the United States from ever raising the issue again in this litigation. It is axiomatic that Federal courts are courts of limited jurisdiction, and are empowered only to adjudicate those claims over which they may properly exercise jurisdiction, and the conduct of the parties in litigation cannot operate to vest a court with subject-matter jurisdiction where none exists. The United States Supreme Court has explained:

> Subject-matter jurisdiction, then, is an Art. III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign. Certain legal consequences directly follow from this. For example, no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings.

Insurance Corp. of Ireland, Ltd. V. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982) (internal citations omitted). See also Okereke v. United States, 307 F.3d 117, 120 n.1 (3d Cir. 2002) (citing Pennsylvania v. Union Gas Co., 491 U.S. 1, 26 (1989) (Stevens, J., concurring) ("[T]he cases are legion holding that a party may not

waive a defect in subject-matter jurisdiction or invoke federal jurisdiction simply by consent.")); <u>Brown v. Phila. Housing Auth.</u>, 350 F.3d 338, 347 (3d Cir. 2003) ("[S]ubject matter jurisdiction is not a waivable defense.  Indeed, it is well-settled that a party can never waive subject matter jurisdiction.").  Moreover, Rule 12(h) of the Federal Rules of Civil Procedure makes clear that the issue of subject-matter jurisdiction is an issue that remains central throughout federal litigation, and the lack of subject-matter jurisdiction compels this dismissal of an action.  <u>See</u> Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Thus, the United States timely complied with the case-management order directing a response to the amended complaint on or before September 5, 2014, and properly moved the Court to dismiss this action for lack of subject-matter jurisdiction.

**E.**   **The Evidence Shows that Wills Never Exhausted His FTCA Claim, and His Failure to Do So Compels Dismissal of the Action**

When the United States initially asserted that Wills failed to file an administrative tort claim with the BOP's Northeast Regional Office ("NERO"), it did so because BOP officials had no record of a tort filing from Wills alleging salmonella poisoning.  (Doc. 24.)  Wills opposed the initial motion to dismiss, and attached documentation in an attempt to show that he did in fact exhaust his remedies.  (Doc.

12

26.)  At that time, the United States withdrew its initial motion to dismiss for lack of

subject-matter jurisdiction, but has since determined, and demonstrated in a highly

persuasive fashion, that Wills has fabricated these documents and, indeed, entirely

made up his efforts to exhaust his administrative remedies.

Pursuant to 28 U.S.C. § 2672, the BOP has established an administrative

process by which an individual may seek formal review of a claim for money

damages for personal injury or death, or for damage or loss of property.  See 28

C.F.R. § 543.30 (2013); see also Doc. 53, Ex. A, Declaration of Lynneth Leslie

("Leslie Decl.") ¶ 3.)  Under the BOP's Program Statement 1320.06, in order to

exhaust the administrative tort claims process, a claimant must present his claim to

the appropriate BOP Regional Office where the allegedly tortious conduct occurred.

(Leslie Decl. ¶ 3.)  In this case, Wills was housed at USP-Canaan, where the

salmonella outbreak occurred, and his administrative claim was required to be

presented to NERO.  Wills claims that he endeavored to present his claims to NERO,

but was foiled as a result of a string of incredible coincidences that no rational trier

of fact could conceivably believe.

First, Wills claims that he addressed his administrative claim to NERO, in

Philadelphia, but for reasons that are never explained, mistakenly addressed the outer

envelope to the Southeast Regional Office ("SERO") in Atlanta, Georgia.  He next

13

claims that SERO received the claim on August 26, 2011, and returned it to him, advising him to forward the claim to NERO, but assured him that the SERO mail stamp "would serve as proof of receipt by administrative authorities for tolling purposes with regards to the administrative filing limitations period." (Doc. 58, at 6.) Wills does not attach any documentary proof of this alleged statement by SERO, but instead relies only upon his own allegations.

Wills next claims that he sent a letter to NERO dated February 6, 2012, again outlining his tort claim, and mailed it to the "Northeast Regional Office, Regional Director, U.S. Customs House, Room 242, 2nd & Chestnut Street, Philadelphia, PA 19106." (Id.; Doc. 26, at 13-14.) Wills then alleges that even though he addressed this mailing to NERO in Philadelphia, it was somehow misdelivered by the United States Postal Service to SERO in Atlanta where it was received on June 2, 2012, and time-stamped on that day. The records database that BOP maintains does not support any of these assertions, as there is no record that Wills has ever filed an administrative tort claim in any BOP Region, including NERO and SERO, for injuries allegedly sustained in this case.

The United States has submitted a declaration from Lynneth Leslie, a Legal Instruments Examiner at SERO, a capacity in which she has been employed since 2004. (Leslie Decl. ¶ 1.) In her position as Legal Instruments Examiner, Leslie

14

represents that she has access to most records maintained in the ordinary course of business at SERO, including records maintained in the BOP's computerized databases known as Content Manager and SENTRY. Content Manager is a computer program that tracks and stores information concerning litigation and administrative tort claims filed by or on behalf of federal prisoners, staff members, and civilians, both in the Southeast region and nationally. The SENTRY database maintains records that also relate to administrative tort claims, among other matters. Leslie represents that in her capacity as Legal Instruments Examiner, she is also familiar with SERO procedures for the receipt and handling of incoming mail. (Id.)

Leslie attests that review of SERO's databases, the hard copies of tort claims maintained at SERO, and other factors compel the conclusion that Wills has fabricated the documents he has described as his administrative tort claims that were somehow misdelivered repeatedly to SERO.

Notably, Leslie observes that whereas Wills has alleged that on June 2, 2012, SERO somehow received a letter that he mailed to NERO on February 6, 2012, nearly four months earlier, this asserted fact is almost certainly untrue. Aside from the extraordinary passage of time that this delivery allegedly took–four  months– as Leslie notes, June 2, 2012, was a Saturday, and Leslie has represented that SERO – like many federal offices – is closed on that day, and does not receive mail from the

United States Postal Service on Saturday or Sunday.  (Id. ¶ 9.)  Leslie further attests that even assuming a SERO attorney came into the office on June 2, 2012, he or she would have been able to receive or stamp incoming mail; instead, mail received on the first business day following a weekend, usually a Monday, is date-stamped on that day.  (Id.)  Leslie confirms that "[n]o SERO employee would stamp a piece of incoming mail on a Saturday."  (Id.)

Furthermore, the manner in which Wills' documents were date-stamped is notably different from the practice followed at SERO, fact which casts grave doubt upon the authenticity and provenance of these records.   Wills has produced documents that bear date-stamps on multiple pages, (Doc. 26.), but this is not the way that SERO stamps incoming mail.  Instead, Leslie attests that SERO identifies the primary or cover sheet, and then places a single date-stamp on that sheet in an area that is most legible. (Leslie Decl. ¶ 10.)  Thus, it is highly improbable that Wills would have been returned documents bearing date-stamps on multiple pages, such as those he attached to his original brief in opposition to the United States initial motion to dismiss.  (Doc. 26.)

Additionally, Leslie notes that Wills has alleged that he mailed his documents and correspondence to the "Northeast Regional Office, Regional Director, U.S. Customs House, Room 242, 2nd & Chestnut Street, Philadelphia, PA 19106."  If that

16

was actually the case, Leslie represents that there is simply no credible reason why these documents would bear date-stamps from SERO, in Atlanta; instead they have been date-stamped by NERO.  (Leslie Decl. ¶ 11.)

Another fact that Leslie points out causes Wills' claims to be even more incredible, and even more clearly indicates that his documentary "evidence" is fabricated:  Wills was housed at USP-Canaan from January 13, 2009, until April 30, 2012.  USP-Canaan is located within BOP's Northeast Region.  Wills has been incarcerated at FCC Coleman, in Coleman, Florida since May 2, 2012.  (Id. ¶ 12, Attach. B, Inmate History ADM-REL for Christopher Wills.)  FCC Coleman is located in the BOP's Southeast Region, where Wills claims his mail was eventually received.

The fact that BOP has no records that corroborate Wills' dubious assertion that he filed two administrative tort claims with NERO gives rise to substantial doubt about Wills' claim that he timely filed these administrative claims.  Wills' contradicted assertions in this regard are further undermined by his claim that mail addressed to an office in Philadelphia was somehow wrongly delivered to SERO where it was date-stamped in a fashion wholly at odds with agency practice on a day when no one was at work and the office did not receive mail; this is simply not credible.  Had the documents in fact been sent to NERO, there is no conceivable

reason why they would have been stamped by SERO.  Furthermore, it borders on the absurd to believe that documents addressed to NERO were somehow misdelivered to SERO – the regional office located in the very region where Wills has been incarcerated since May 2012.

Furthermore, the purported documentary evidence that Wills has attached in an effort to demonstrate compliance with the administrative review process has had the unintended effect of showing his documents to be fabrications.  As noted, the evidence that Wills submitted includes documents that Wills attached to his initial brief that he claims were misdelivered to SERO (Doc. 26.), on one occasion allegedly received and date-stamped on a day when SERO would not have received mail, and then date-stamped in a manner that SERO does not follow.  Furthermore, the United States has pointed out that administrative tort documents sent to SERO would not have been returned to Wills in any event, as there would have been no reason to do so, and Wills has nothing but his own self-serving allegations to show otherwise.

Any fair review of the documents that Wills has submitted, along with the parties' briefs, and Lynneth Leslie's declaration leads ineluctably to the conclusion that Wills has somehow come into possession of a SERO date-stamp, and then used this stamp in a manner contradictory to BOP practice in an effort to give the appearance that he exhausted his administrative tort claim.  Wills' "evidence" is

simply not credible, and instead compels the conclusion that Wills has fabricated the very evidence that he relies on. In response to the United States' showing, Wills has done nothing more than to double-down on his discredited assertions, and to suggest that human error could possibly be to blame for the confusion. This is simply a bridge too far in the face of contradictory, credible evidence, and the Court should reject Wills's assertions and claims.

"In a factual challenge [to subject matter jurisdiction], the plaintiff has the burden of persuasion to show that jurisdiction exists. Gould, 220 F.3d at 178; Mortensen, 549 F.2d at 891. If the defendant presents evidence contesting any allegations in the pleadings, the presumption of truthfulness does not attach to the plaintiff's allegations and the plaintiff m[ust] present facts . . . ." Moyer Packing Co. v. United States, 567 F. Supp. 2d 737, 748 (E.D. Pa. 2008). In this case, because there is no credible evidence upon which any rational factfinder could conclude that Wills exhausted his administrative tort claim, Wills has failed to carry his burden to show that this Court has subject-matter jurisdiction over the remaining FTCA claim in this case, and that claim should now be dismissed with prejudice.

## IV.   **RECOMMENDATION**

For the foregoing reasons, it is hereby recommended that the Court grant the United States' motion to dismiss (Doc. 52.), enter an order dismissing Wills's FTCA claim with prejudice, and close the file.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of February, 2015.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge

20